IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

METLIFE LIFE AND ANNUITY
COMPANY OF CONNECTICUT,

　　Plaintiff,

　　　　v.

UZO AKPELE, et al.,

　　Defendants.

CIVIL ACTION FILE
NO. 1:13-CV-3898-TWT

**OPINION AND ORDER**

　　　This is an interpleader action.  It is before the Court on the Defendant Ann J. Herrera's Motion to Enforce Settlement and/or for Partial Summary Judgment [Doc. 60], the Plaintiff's Motion for Summary Judgment [Doc. 77], the Akpele Defendants' Counter-Motion for Summary Judgment Against the Akpele Estate and Ann J. Herrera [Doc. 79], the Akpele Defendants' Motion to Strike or Disregard Portions of the Affidavit of James McCarthy [Doc. 83], the Akpele Defendants' Counter-Motion for Summary Judgment Against the Plaintiff [Doc. 84], and the Defendant Ann J. Herrera's Motion to Disregard or to Exclude Consideration of the Declaration of Brent L. Wilson or, in the Alternative, to Disregard Portions of the Wilson Declaration [Doc. 103]. For the reasons stated below, Herrera's Motion to Enforce Settlement and/or for

Partial Summary Judgment is DENIED and the Akpele Defendants' Counter-Motion for Summary Judgment Against Herrera is DENIED. The Plaintiff's Motion for Summary Judgment is GRANTED and the Akpele Defendants' Counter-Motion for Summary Judgment Against the Plaintiff is DENIED. The Akpele Defendants' Motion to Strike or Disregard is DENIED. Herrera's Motion to Disregard is DENIED.

## I. Background

Dr. Ignatius Akpele incorporated AIE Surgical Practice, LLC, as a Georgia limited partnership on September 5, 2000.[1] Dr. Akpele was the sole member of that practice.[2] On April 19, 2005, AIE Surgical Practice established the AIE Surgical Practice, LLC Defined Benefit Plan.[3] The Plan was approved by the IRS as a tax qualified, § 412(I), non-integrated pension plan on August 23, 2006.[4] Dr. Akpele was the sole trustee named in the plan documents.[5]

To fund the Defined Benefit Plan, he applied for a whole life insurance policy in the face amount of $5,148,206.00 with Travelers Life and Annuity Company,

---

[1]     Def. Herrera's Statement of Material Facts ¶ 1.

[2]     Id. ¶ 2.

[3]     Id. ¶ 3.

[4]     Id. ¶¶ 3-4.

[5]     Id. ¶ 6.

which is now known as MetLife Life and Annuity Company of Connecticut.[6] That application was dated April 27, 2005.[7] Dr. Akpele signed the application as trustee of the Defined Benefit Plan and designated that plan as the owner of the life insurance policy.[8] Initially, Dr. Akpele designated Defendants Uzo Akpele and their minor child, J.E.A., (the "Akpele Defendants") as beneficiaries of the life insurance policy.[9] During the underwriting process, the beneficiary on the insurance policy was changed to the Defined Benefit Plan.[10] The Akpele Defendants dispute whether Dr. Akpele authorized this change.[11] They recognize, however, that the Defined Benefit Plan documents require the plan to be the beneficiary of any insurance policies purchased for the purpose of funding the plan.[12] In fact, Travelers could not issue the policy until the Defined Benefit Plan was listed as both the owner and beneficiary of the life

---

[6]      Id. ¶ 8.

[7]      Id.

[8]      Id. ¶¶ 10-11.

[9]      Id. ¶ 12.

[10]     Id. ¶ 13.

[11]     Id.

[12]     Defs. Uzo Akpele and J.E.A.'s Br. in Opp'n of Ann Herrera's Mot. for Partial Summ. J. and in Supp. of Their Counter-Mot. for Summ. J., at 19, 25.

insurance policy.[13] Travelers issued the policy on Dr. Akpele's life with a contract date of April 19, 2005, in the amount of $5,148,206.00, with the Defined Benefit Plan as the designated beneficiary.[14] When MetLife acquired Travelers Life, it reissued the policy as a MetLife policy with identical terms.[15]

The policy stated that it would provide a death benefit and cash values until the maturity date, assuming the required premiums were paid.[16] It also provided for paid-up insurance, where a reduced amount would be paid if Dr. Akpele ceased making premium payments.[17] MetLife sent yearly premium notices to Dr. Akpele at various addresses and received payments from AIE Surgical Practice in 2006, 2007, and 2008.[18] MetLife prepared another premium notice on March 11, 2009, with a payment due date of April 1, 2009.[19] Neither Dr. Akpele nor the AIE Surgical Practice paid the annual premium for 2009.[20] The policy therefore converted to reduced paid-up

---

[13]     Pl.'s Statement of Facts ¶¶ 15-16, 18.

[14]     Def. Herrera's Statement of Material Facts ¶ 14.

[15]     Id.; Pl.'s Statement of Facts ¶ 35.

[16]     Id. ¶ 30.

[17]     Id. ¶ 32.

[18]     Id. ¶ 38.

[19]     Id. ¶ 39.

[20]     Id. ¶ 41.

insurance with a full surrender value of $299,301.35 and a primary insured death claim value of $516,108.00.[21] On January 5, 2010, MetLife sent Dr. Akpele a letter explaining that the policy had been converted to reduced paid-up status, but noting that he had the ability to reinstate coverage.[22] By email dated March 2, 2010, Andy Boyer from First Actuarial Corporation inquired about the cash surrender value of the policy.[23] He specifically stated that Dr. Akpele "stopped making premiums to the policy after 4/18/09" and "received a letter saying that the policy has been converted to a paid-up policy."[24] Dr. Akpele also signed a letter on March 2, 2010, authorizing Bruce M. Mesner of American Business & Professional Program to correspond on his behalf regarding his life insurance policies.[25] Mr. Mesner requested that MetLife send him  information about the value of the policy if no further premiums were paid.[26] MetLife responded on March 19, 2010, with the current value of the policy and followed up on March 24, 2010, with projected future values of the policy.[27]

---

[21]   Id. ¶ 42.

[22]   Id. ¶ 43.

[23]   Id. ¶ 44.

[24]   Id.

[25]   Id. ¶ 45.

[26]   Id. ¶ 46.

[27]   Id. ¶¶ 47-48.

Dr. Akpele became ill in December 2009, was diagnosed with terminal multiple myeloma cancer and other attendant illnesses in early 2010, and passed away on December 30, 2010.[28] Unaware that Dr. Akpele had died, MetLife sent a statement regarding imputed income in January of 2011.[29] After learning of Dr. Akpele's death, MetLife sent a claim packet addressed to his family on February 1, 2011.[30] That letter explained that the benefits were payable to the trustee of the Defined Benefit Plan and requested that the trustee send the paperwork to process the claim.[31] MetLife made a second request that the trustee send claim paperwork on May 7, 2011.[32] By order of the Probate Court of Fulton County, Georgia, Defendant Ann J. Herrera was appointed temporary administrator of Dr. Akpele's estate on July 1, 2011.[33] On November 29, 2012, Uzo Akpele called MetLife and requested the benefits from the policy.[34] MetLife noted that Mrs. Akpele stated that she was not the trustee, but would have the

---

[28]   Def. Herrera's Statement of Material Facts ¶¶ 15-16.

[29]   Pl.'s Statement of Facts ¶ 51.

[30]   Id. ¶ 52.

[31]   Id. ¶ 53.

[32]   Id. ¶ 54.

[33]   Def. Herrera's Statement of Material Facts ¶ 22.

[34]   Pl.'s Statement of Facts ¶ 55.

trustee return the required form and certified death certificate.[35] On December 12, 2012, the Akpele Defendants filed a claim with MetLife for proceeds under the life insurance policy.[36] MetLife refused to pay death benefits to the Akpele Defendants, citing the ground that they were not the listed beneficiaries.[37] Instead, MetLife filed its interpleader complaint on November 22, 2013, and deposited the death benefits with interest in the amount of $635,562.25 on December 16, 2013.[38] MetLife, Herrera, and the Akpele Defendants all now move for summary judgment on various grounds.

## II. Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[39] The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.[40] The party seeking summary judgment must first identify grounds to

---

[35]   Id. ¶ 56.

[36]   Def. Herrera's Statement of Material Facts ¶ 24.

[37]   Pl.'s Statement of Facts ¶ 58.

[38]   Id. ¶ 60.

[39]   FED. R. CIV. P. 56(a).

[40]   Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).

show the absence of a genuine issue of material fact.[41] The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.[42] "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party."[43]

### III. Discussion

### A. Herrera's Motion for Summary Judgment

Herrera moves to enforce the settlement agreement she entered with the Akpele Defendants or, in the alternative, for partial summary judgment. The Akpele Defendants first object to this motion, claiming that it is an untimely attempt to amend the pleadings or a motion for summary judgment that was filed too early. Under Georgia law, a motion to enforce a settlement agreement is treated similarly to a motion for summary judgment.[44] Under the Local Rules, a motion for summary judgment should be filed as soon as possible, but "not later than 30 days after the

---

[41]     Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

[42]     Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

[43]     Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).

[44]     Ballard v. Williams, 223 Ga. App. 1 (1996).

close of discovery."[45] Herrera's motion complied with the time requirements of the Local Rules. Additionally, this Court finds no prejudice to the Akpele Defendants by the early filing of the motion, given that there has now been ample time for full briefing. The Akpele Defendants' objection is therefore overruled. Additionally, pursuant to this Court's order granting leave to file excess pages, this Court will not disregard the motion.

Georgia law favors compromise and will enforce "definite, certain, and unambiguous" settlement agreements.[46] These agreements will be enforced even if the parties fail to follow through and sign the final document.[47] Additionally, a party is bound by her attorney's agreement to settle the case, as long as the attorney had apparent authority to do so.[48] Here, there is no dispute that Herrera's counsel and the Akpele Defendants' counsel entered into settlement negotiations. There is also no dispute that they created a proposed agreement. The dispute arises over whether Mr. Aniekwu, the Akpele Defendants' counsel, communicated to Mr. Wayne, Herrera's

---

[45]     Local Rule 56.1D.

[46]     Cumberland Contractors, Inc. v. State Bank & Trust Co., 327 Ga. App. 121, 127 (2014).

[47]     Id. at 128.

[48]     Stephens v. Alan Mock Constr. Co., Inc., 302 Ga. App. 280, 284-85 (2010).

counsel, that he did not have authority to settle the case. Mr. Wayne and the email correspondence offered seem to indicate that Mr. Aniekwu never made any such communication.[49] But Mr. Aniekwu stated in his affidavit that he clearly expressed his lack of authority to Mr. Wayne in their telephone conversations.[50] This conflicting evidence indicates a genuine dispute of material fact, meaning that Herrera's motion should be denied.

The Akpeles make a counter-motion for summary judgment, arguing that ERISA preempts any agreement and requires judgment in favor of Uzo Akpele for the full amount of the life insurance policy. This argument must fail as a matter of law. While ERISA governs distribution of benefits from employee benefit plans, it does not govern distribution of benefits from life insurance policies.[51] The policy at issue here is the life insurance policy, not the Defined Benefit Plan it was purchased to fund. In fact, the Akpele Defendants do not argue that the life insurance benefits should be paid to Uzo Akpele directly, but rather that they should be paid to the trustee of the

---

[49]     Def. Herrera's Statement of Material Facts ¶¶ 29-46.

[50]     Aniekwu Decl. ¶¶ 16, 19.

[51]     29 U.S.C. § 1003(a).

Defined Benefit Plan.[52] The Akpele Defendants' counter-motion for summary judgment should therefore be denied.

### B. Herrera's Motion to Disregard the Wilson Declaration

Herrera moves to disregard or exclude consideration of the Wilson Declaration, which was filed by the Akpele Defendants in connection with the Plaintiff's motion for summary judgment. Herrera's motion should be denied because she lacks standing to object to evidence offered in support of a motion for summary judgment to which she is not a party. The Court notes, however, that it will not consider portions of affidavits and declarations containing legal conclusions on summary judgment.

### C. The Akpele Defendants' Motion to Disregard the McCarthy Affidavit

In support of its motion for summary judgment, MetLife submitted numerous business documents, which it identified through the Affidavit of James McCarthy.

The Akpele Defendants move to strike or disregard that affidavit, arguing that it contains hearsay, is not based on personal knowledge, and that the attached documents have not been properly authenticated. Herrera correctly states that a motion to strike is not the proper vehicle for challenging evidence on summary judgment.[53]

---

[52]     Defs. Uzo Akpele and J.E.A.'s Br. in Opp'n of Ann Herrera's Mot. for Partial Summ. J. and in Supp. of Their Counter-Mot. for Summ. J., at 25.

[53]     Fed. R. Civ. P. 56 advisory committee's note of 2010.

The Court will instead review the evidence and disregard any portions of the affidavit determined to be inadmissible.[54] Affidavits must be based on personal knowledge, and generally courts may consider evidence on summary judgment only if it will be admissible at trial.[55] Hearsay evidence may only be considered if it can be reduced to admissible form at trial.[56]

The Court first finds that Mr. McCarthy's affidavit is based on his personal knowledge and review of files as a corporate representative.[57] Second, the Court finds no issue with authenticity of documents given that Federal Rule of Evidence 901(b)(1) allows authentication by testimony of a witness with knowledge "that an item is what it is claimed to be."[58] Mr. McCarthy's testimony regarding the screenshots from the billing system satisfies that rule. Finally, the Court finds that the attached documents were made and kept in the regular course of business and therefore are excepted from

---

[54]   Fed. R. Civ. P. 56(c)(2).

[55]   Fed. R. Civ. P. 56(c)(4).

[56]   Jones v. UPS Ground Freight, 683 F.3d 1283, 1293-94 (11th Cir. 2012).

[57]   McCarthy Aff. ¶¶ 2-3.

[58]   Fed. R. Evid. 901(b)(1).

hearsay under Federal Rule of Evidence 803(6).[59] The Akpele Defendants' Motion to Strike or Disregard should be denied.

### D. MetLife's Motion for Summary Judgment

MetLife moves for summary judgment on the Akpele Defendants' counterclaims. The first counterclaim is for a declaratory judgment and reformation of the contract. As to the claims for reformation, the Akpele Defendants claim that there was a mutual mistake between Dr. Akpele and MetLife, entitling them to reformation with respect to the beneficiary of the policy and the policy rider. For a court to reform a contract based on a mistake, there must be evidence that the mistake was mutual.[60] As to the beneficiary of the policy, it is clear from emails sent by the insurance company prior to the issuance of the policy that the Defined Benefit Plan had to be the beneficiary of the life insurance policy.[61] In fact, the Akpele Defendants have stated in filings to this Court that the proper beneficiary is the Defined Benefit Plan.[62] This Court will not reform the contract to change the beneficiary.

---

[59]      McCarthy Aff. ¶¶ 2-3.

[60]      O.C.G.A. § 23-2-30.

[61]      Pl.'s Statement of Facts ¶¶ 15-16, 18.

[62]      Defs. Uzo Akpele and J.E.A.'s Br. in Opp'n of Ann Herrera's Mot. for Partial Summ. J., at 19.

As to the policy rider, the Akpele Defendants argue that there was a mutual mistake between Dr. Akpele and Travelers regarding a Premium Waiver Rider. The application for the policy shows that Dr. Akpele selected a Lapse Protection Guarantee.[63] The application clearly indicated that the Lapse Protection Guarantee Rider only applied to a variable universal life policy, not a whole life policy, which is what Dr. Akpele obtained.[64] The Court finds no evidence of a mutual mistake with respect to the policy rider. The Court will not reform the contract to add a policy rider that never could have applied to the whole life policy obtained by Dr. Akpele.

The second counterclaim is for breach of contract. The Akpele Defendants contend that MetLife breached the contract by failing to pay the full policy benefit. The evidence is clear that Dr. Akpele did not make a premium payment after April of 2008.[65] Additionally, MetLife has presented evidence demonstrating that Dr. Akpele intended to stop making payments.[66] As a matter of law, therefore, MetLife did not breach the contract. It simply followed the provisions of the contract by converting

---

[63]   Pl.'s Mot. for Summ. J., at Ex. 2, p. 3.

[64]   Id.; Def. Herrera's Statement of Material Facts ¶ 8.

[65]   Pl.'s Statement of Facts ¶ 41.

[66]   Pl.'s Statement of Facts ¶¶ 44-46.

the policy to reduced paid-up status after payment of premiums ceased. MetLife's motion for summary judgment on the second counterclaim should be granted.

The third counterclaim is for negligence, breach of fiduciary duty, and conversion. A tort action may not be based on the breach of a contractual duty alone, but must instead be based on conduct that also breaches some statutory or fiduciary duty.[67] For example, in Unified Services, the defendants were subject to both tort and contract actions where they were contractually obligated to remit insurance premium payments from the client to the plaintiff, but failed to do so.[68] There, in addition to breaching the contract, the defendants breached their fiduciary duties.[69] Additionally, as a general rule, there is no confidential relationship between an insured and an insurer – in fact, that relationship is one of antagonistic interests.[70] Here, the Akpele Defendants have not shown a confidential relationship with MetLife. There is no evidence that the Akpele Defendants were the insured on the policy – that was Dr. Akpele – but even if there were, that would not lead this Court to find a confidential relationship between an insurer and its insured. There can therefore be no tort action

---

[67]    Unified Servs., Inc. v. Home Ins. Co., 218 Ga. App. 85, 87 (1995).

[68]    Id.

[69]    Id.

[70]    Willis v. Allstate Ins. Co., 321 Ga. App. 496, 501 (2013).

here. The Plaintiff's motion for summary judgment on the Akpele Defendants' third counterclaim should be granted. On the same logic that there can be no tort claim in this matter, MetLife's motion for summary judgment on the Akpele Defendants' sixth counterclaim (which is for conversion) should be granted.

The fourth counterclaim is for bad faith. The Akpele Defendants seek damages for bad faith failure to pay benefits under the insurance policy under O.C.G.A. § 13-6-11 or O.C.G.A. § 33-4-6 as well as punitive damages. Bad faith means "a frivolous and unfounded refusal to pay a claim."[71] Because the evidence demonstrates that Dr. Akpele intended to stop making payments, there is no evidence that MetLife paid a lower amount in bad faith.[72] MetLife's motion for summary judgment on the counterclaim for bad faith should therefore be granted.

The fifth counterclaim is for fraud and deceit. Under Georgia law, a statement regarding the scope or nature of insurance coverage is an opinion of law, which cannot be the basis for a claim for fraud.[73] The Akpele Defendants base their counterclaim for fraud and deceit on statements regarding a Premium Waiver Rider. Those statements relate to the nature of insurance coverage and therefore cannot support a claim for

---

[71]    United Servs. Auto. Ass'n v. Carroll, 226 Ga. App. 144, 148 (1997).

[72]    Pl.'s Statement of Facts ¶¶ 44-46.

[73]    Marett Props., Inc. v. Prudential Ins. Co. of Am., 167 Ga. App. 631, 633 (1983).

fraud. Additionally, there is no evidence of fraud with respect to the beneficiary designation; even the Akpele Defendants admit that the Defined Benefit Plan had to be designated as the beneficiary under the life insurance policy. In fact, the Akpele Defendants offer evidence to show that the Defined Benefit Plan was required to be the beneficiary of the life insurance policy.[74] The Akpele Defendants seemingly conflate the designation of a beneficiary under the Defined Benefit Plan and the designation of a beneficiary of the life insurance policy. It is clear from the evidence, however, including that presented by the Akpele Defendants, that the Defined Benefit Plan was properly designated as the beneficiary of the life insurance policy. The Plaintiff's motion for summary judgment on the counterclaim for fraud and deceit should therefore be granted.

MetLife also moves to be dismissed from the action, for a permanent injunction against all defendants, and for reasonable attorneys' fees. "A successful interpleader suit results in the entry of a discharge judgment on behalf of the stakeholder; once the stakeholder turns the asset over to the registry of the court, all legal obligations to the asset's claimants are satisfied."[75] Attorneys' fees may be awarded in an interpleader

---

[74]    Wilson Decl. ¶¶ 10, 15.

[75]    In re Mandalay Shores Co-op. Hous. Ass'n, Inc., 21 F.3d 380, 383 (11th Cir. 1994).

action at the discretion of the court.[76] Those fees are not warranted, however, when the interpleader claim arises out of the normal course of business.[77] Because MetLife has satisfied all obligations and the Court grants MetLife's motion for summary judgment on all of the Akpele Defendants' counterclaims, MetLife should be dismissed from this action. Additionally, all the Defendants are permanently enjoined from filing suit against MetLife related to the payment of the life insurance policy. Finally, given the time and expense spent by MetLife defending against the Akpele Defendants' counterclaims, the Court awards MetLife its reasonable attorneys' fees related to the counterclaims.

## IV. Conclusion

For the reasons stated above, the Defendant Ann J. Herrera's Motion to Enforce Settlement and/or for Partial Summary Judgment [Doc. 60] is DENIED. The Plaintiff's Motion for Summary Judgment [Doc. 77] is GRANTED. The Akpele Defendants' Counter-Motion for Summary Judgment Against the Akpele Estate and Ann J. Herrera [Doc. 79] is DENIED. The Akpele Defendants' Motion to Strike or Disregard Portions of the Affidavit of James McCarthy [Doc. 83] is DENIED. The Akpele Defendants' Counter-Motion for Summary Judgment Against the Plaintiff

---

[76]   Id. at 382-83.

[77]   Id. at 383.

[Doc. 84] is DENIED. The Defendant Ann J. Herrera's Motion to Disregard or to Exclude Consideration of the Declaration of Brent L. Wilson or, in the Alternative, to Disregard Portions of the Wilson Declaration [Doc. 103] is DENIED.

SO ORDERED, this 11 day of September, 2015.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge